STATE OF CONNECTICUT *v.* TRACY VARGAS
(AC 22236)

Schaller, West and Bishop, Js.

Argued September 13, 2002—officially released January 14, 2003

*Dennis P. McDonough*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, special deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Tracy Vargas, appeals from the judgment of conviction, rendered after a jury

trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a),[1] conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-48 (a)[2] and 53a-103 (a), and larceny in the third degree in violation of General Statutes § 53a-124 (a).[3] On appeal, the defendant claims that the court (1) improperly denied his motion for a judgment of acquittal because there was insufficient evidence to support a conviction of conspiracy to commit burglary in the third degree and (2) abused its discretion in denying his request for a one day continuance at trial on defense counsel's change in status from standby counsel to full counsel. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of July 18, 2000, the defendant, John Sherwood and Ivy Sailer drove to a private residence in New Fairfield. Once they reached the house, the defendant and Sherwood knocked on the front door to see if anyone was home. When there was no answer, the defendant suggested that they go to the rear of the house because he suspected that there was an open window. When they reached the back of the house, the defendant entered the house through a partially open window. Once inside the house, the defendant unlocked

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119 . . . ."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

the back door so that Sherwood could enter. After the defendant and Sherwood had both entered the house, they opened drawers in the bedroom and took jewelry, a credit card and a cellular phone. After about five minutes, the defendant and Sherwood left the house and went to their vehicle. Later, all three individuals were apprehended by the Newtown police.

The state charged the defendant with burglary in the third degree, conspiracy to commit burglary in the third degree, larceny in the third degree and conspiracy to commit larceny in the third degree. The court thereafter granted the defendant's motion for a judgment of acquittal of conspiracy to commit larceny in the third degree, and the jury subsequently returned a guilty verdict on the remaining three counts. The court sentenced the defendant to a total effective term of twelve years in prison with three years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal because the evidence was insufficient to support the conviction of conspiracy to commit burglary in the third degree. Specifically, the defendant argues that there was not enough evidence produced at trial for the jury to have found that he and Sherwood had agreed to engage in any conduct, as required for a conviction under § 53a-48 (a).[4] We find that argument unpersuasive.

The following additional facts are relevant to the defendant's claim. During direct examination, the fol-

---

[4] Although we recognize that intent is a required element in proving conspiracy under General Statutes § 53a-48 (a) and that the state addresses that point in its brief, the defendant does not claim on appeal that the evidence was insufficient to establish intent. We therefore decline to consider that issue.

lowing colloquy took place between the prosecutor and Sherwood:

"Q. When you decided to get in the house that way, whose idea was that? Is that both of yours idea to go into the house?

"A. [The defendant] had mentioned it, and I just agreed with it, you know. I went along with it.

\* \* \*

"Q. And what did you want to do once you got in the house? Were you there to steal things at that point?

"A. Yeah. We were there to go through some things, I guess. [The defendant] said that he knew the [home-owner] had money and some nice jewelry and stuff.

"Q. [The defendant] said that?

"A. Yes."

We first set forth our well settled standard of review concerning the defendant's sufficiency of the evidence claim. "[W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Senquiz*, 68 Conn. App. 571, 575–76, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).

Section 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he *agrees* with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." (Emphasis added.)

General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

Therefore, "[t]o establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators." *State* v. *Ortiz*, 169 Conn. 642, 645, 363 A.2d 1091 (1975). "Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Internal quotation marks omitted.) *State* v. *Liebowitz*, 65 Conn. App. 788, 797, 783 A.2d 1108, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). Also, "[t]hat the evidence is circumstantial rather than direct does not diminish the force of that evidence." *State* v. *Williams*, 58 Conn. App. 125, 131, 752 A.2d 1120, cert. denied, 254 Conn. 915, 759 A.2d 509 (2000).

Although the defendant argues that the evidence was insufficient to conclude that he and Sherwood expressly agreed to commit burglary "[i]t is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words 'we have an agreement.' " *State* v. *Stellato*, 10 Conn. App. 447, 453, 523 A.2d 1345 (1987). "The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Caprilozzi*, 45 Conn. App. 455, 465, 696 A.2d 380, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997).

Furthermore, "[a] jury can infer from a defendant's actions that activities were planned in advance to facilitate the crime. . . . Participation in the act itself may be sufficient to allow the jury to infer the conspiracy from that conduct." (Citation omitted.) *State* v. *Elijah*, 42 Conn. App. 687, 696, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996). At trial, when the prosecutor asked Sherwood why he and the defendant were at the home, Sherwood replied that they "were there to go through some things." The state offered direct evidence, through Sherwood's testimony, that he and the defendant had agreed to enter the residence. When asked by the prosecutor whether he and the defendant had intended to "steal things" once they were inside the house, Sherwood answered in the affirmative.

Given all of the evidence, the jury reasonably could have concluded that the defendant and Sherwood had agreed to engage in the conduct that constituted the crime of burglary. Therefore, the jury could have reasonably concluded that the defendant and Sherwood conspired to commit burglary. The court therefore properly denied the defendant's motion for a judgment of acquittal.

II

The defendant's second claim is that the court improperly denied his request for a one day continuance. Specifically, the defendant argues that a continuance was warranted because defense counsel's change in status from standby counsel to full counsel left defense counsel unprepared to handle the case. We disagree.

The following additional facts are necessary to a discussion of the defendant's claim. The special public defender who represented the defendant at trial (defense counsel) filed his appearance in the case on or about January 22, 2001. Jury selection began on May

22, 2001, and continued through the opening of trial on May 23, 2001. During the first day of jury selection, the defendant sought to represent himself pro se because he was unhappy with defense counsel's performance. The court canvassed the defendant and determined that he was competent to defend himself during trial. The court then notified defense counsel that his status had changed from full counsel to standby counsel. The defendant represented himself until the morning of May 24, 2001, when he requested defense counsel's reinstatement as full counsel. The court changed defense counsel's status back to full counsel. Defense counsel immediately requested a one day continuance to enable him to prepare fully for trial. The court stated that defense counsel was a knowledgeable and experienced attorney who had been full counsel until the beginning of jury selection less than two days earlier, and that the jury and witnesses were present and ready to proceed with the trial. The court therefore denied the defendant's motion for a continuance.

To determine whether the denial of a request for a continuance was improper, we must first set forth the relevant standard of review. "A motion for continuance is addressed to the discretion of the trial court and its ruling will not be overturned absent a showing of clear abuse of that discretion." (Internal quotation marks omitted.) *State* v. *Wegman*, 70 Conn. App. 171, 174–75, 798 A.2d 454, cert. denied, 261 Conn. 918, 806 A.2d 1058 (2002). "To prove an abuse of discretion, the appellant must demonstrate that the denial of the continuance was unreasonable or arbitrary." *State* v. *Breckenridge*, 66 Conn. App. 490, 495, 784 A.2d 1034, cert. denied, 259 Conn. 904, 789 A.2d 991 (2001).

"Our assessment of the reasonableness of the trial court's exercise of discretion is limited to a consideration of those factors on the record known to the court at the time it rendered a decision. . . . The factors

include the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; the likelihood that the denial would substantially impair the defendant's ability to defend himself; the availability of other, adequately equipped and prepared counsel to try the case; and the adequacy of the representation already being afforded to the defendant. . . . Another set of factors has included, as part of the inquiry into a possible abuse of discretion, a consideration of the prejudice that the defendant actually suffered by reason of the denial of the motion for continuance." (Citations omitted; internal quotation marks omitted.) *State* v. *Wegman*, supra, 70 Conn. App. 175–76.

The defendant argues that defense counsel's change in status, from standby counsel to full counsel, necessitated at least a one day continuance to prepare for trial. Specifically, the defendant argues that because the role of standby counsel is essentially passive, defense counsel was unprepared to conduct cross-examination upon reinstatement as full counsel. The defendant claims that being unprepared for trial ultimately prejudiced his case. We are not persuaded.

In support of his position, the defendant states that unlike the role of full counsel, the role of standby counsel is passive, allowing intervention, on request, in a pro se defendant's presentation of the case. That argument is inconsistent with Practice Book § 44-5, which provides: "If requested to do so by the defendant, the standby counsel shall advise the defendant as to legal and procedural matters. If there is no objection by the defendant, such counsel may also call the judicial authority's attention to matters favorable to the defen-

dant. Such counsel shall not interfere with the defendant's presentation of the case and may give advice only upon request." See also *State* v. *Fernandez*, 254 Conn. 637, 642 n.8, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001).

The first sentence of Practice Book § 44-5 clearly defines the scope of the duties of standby counsel. Under the plain language of the section's first sentence, standby counsel is required to be prepared to advise the defendant at any time that the defendant may so request. The unambiguous language therefore supports the court's conclusion that standby counsel was required to be prepared to advise the defendant with regard to cross-examination. Furthermore, as the court stated, defense counsel's status as standby counsel lasted for only one and one-half days, whereas he had acted as full counsel, preparing for trial, for at least four months prior to the status change. In light of those factors, the court reasonably determined that defense counsel had adequate time to prepare for trial. In addition, the court properly considered the impact of the requested continuance on the witnesses and jurors. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's request for a one day continuance.

The judgment is affirmed.

In this opinion the other judges concurred.